# U.S. Department of Justice

**United States Attorney**
**District of Nebraska**

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2006 JUN 14  PM 5: 16

487 Federal Building                                      PH: (402) 437-5241
100 Centennial Mall North      OFFICE OF THE CLERK      FAX: (402) 437-5390
Lincoln, Nebraska 68508-3865

April 21, 2006

4:06CR3070

Marlin Springer, President
Springer Magrath Co., Inc.
c/o William Dittrick
1500 Woodmen Tower
1700 Farnam Street
Omaha, NE 68102-2186

　　　　Re:  United States v. Springer Magrath Co. Inc.

Dear Mr. Springer:

Based upon your representation that you wish to resolve an investigation now pending against
Springer Magrath Co. Inc, in the District of Nebraska, the United States will enter into an
agreement with Springer Magrath Co. Inc., on the following conditions:

1.  Springer Magrath Co. Inc., the defendant herein, hereinafter "corporation", will plead guilty
to count I of an Information charging a violations of Title 50, United States Code, Section
1705(b), and Title 15, Code of Federal Regulation 764.2, export violations.  You understand that
by entering this plea of guilty, the corporation is exposed to a fine of not more than $500,000, up
to 3 years of supervised release, and a $100 special assessment.

1a.  Provided that the corporation demonstrates acceptance of responsibility to the Probation
Office and to the Court, the undersigned Assistant United States Attorney stipulates that the
corporation notified authorities in a timely manner of your intention to enter a plea of guilty,
thereby permitting the government to avoid preparing for trial and permitting the Court to
allocate its resources efficiently.

2.  The corporation will waive indictment by a Grand Jury and consent to the filing of an
Information. The corporation will enter a plea of guilty to the Information as set forth in
paragraph 1 of this agreement at the time of your arraignment thereon.  This Waiver of
Indictment and plea will occur at such time as may be exclusively determined by the United
States Attorney for the District of Nebraska, or his designate, upon reasonable notice to you.

1

3. The undersigned Assistant United States Attorney for the District of Nebraska agrees that the corporation, and Marlin Springer, will not be federally prosecuted in the District of Nebraska for any criminal violations of federal export licensing statutes, of which I or the Department of Commerce currently have actual knowledge, related to unliscensed exports of cattle prods during the period from on or about January 5, 2001, to on or about August 26, 2002, other than as set forth in paragraph numbered one (1) above.

4. The corporation agrees that cooperation with the United States is not anticipated by this agreement, and the corporation understands that a different document would have to be signed should the corporation decide to cooperate in the future.

5. This agreement is limited to the United States Attorney's office for the District of Nebraska and does not bind any other federal, state or local prosecuting authorities, although this office will bring the corporations's cooperation to the attention of other prosecuting authorities, if so requested.

6. The parties hereby agree that the corporation shall pay a fine in the amount of $50,000, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The parties agree that the district court has the discretion to determine the length and terms of any period of supervised release.  In addition to the above-referenced fine and potential term of supervised release, subject to the Court's approval of this plea agreement, the corporation has agreed to  pay an additional penalty of $451,000 to the U.S. Department of Commerce, Bureau of Industry and Security, to settle the administrative violations of the Export Administration Regulations, 15 C.F.R. Parts 730-774 that it committed in connection with its unlicensed exports of cattle prods during the period on or about January 5, 2001 through on or about August 26, 2002.  The corporation, and its President, Marlin Springer, are jointly and severally liable for timely payment of this penalty and it shall be paid in full to the U.S. Department of Commerce within 30 days of date of the Order signed by the Assistant Secretary of Commerce for Export Enforcement.  The corporation and Mr. Springer have also agreed to a three year denial of their export privileges under the EAR that will be suspended in its entirety for a period of one year from the entry of the Order settling the administrative charges, and shall therefore be waived, provided that throughout the period of suspension, the corporation has committed no violation of the Export Administration Act, Export Administration Regulations, or any order, license, or authorization issued thereunder.  Copies of the Department of Commerce Settlement Agreements are attached, hereinafter referred to as "Settlement Agreements."

7.   By signing this agreement, the corporation agrees that any or all information available to the U. S. Probation Office through provisions of pretrial services may be used by the probation office in preparing and submitting its pre-sentence report and may be disclosed to the Court for purposes of sentencing.  The corporation hereby waives any objection to the use of such information for purposes of sentencing.  However, information provided by the corporation, which is not otherwise available to the government, shall not be used against the corporation for sentencing pursuant to §1B1.8 of the Sentencing Guidelines.

2

8. Pursuant to Title 18, United States Code, Section 3013, the Court is obligated to impose at sentencing a mandatory special assessment of $100.00 for each felony count to which the corporation enters a plea of guilty. Collection of any of these unpaid amounts after sentencing has proved to be a time consuming and costly matter for the government. Accordingly, as part of this plea agreement the corporation is required to provide these amounts at the time of plea in the form of a check (i.e., cashier's check, certified check, money order, or your attorney's trust fund check - no personal checks and no cash) made payable to the Clerk of the District Court. The check is to be made payable in the amount of the special assessment. This check is to be delivered, along with the corporation 's Petition to Enter Guilty Plea, to the Clerk of the District Court.

9. By signing this agreement, the corporation acknowledges that, in the event the corporation violates any term or condition of this agreement, the corporation shall not, because of such violation of this agreement, be allowed by either the Court or the United States Attorney for the District of Nebraska, or his designate, to withdraw the corporation's plea of guilty.

10. Should the Court for any reason not accept this plea agreement, this plea agreement shall be considered null and void, and the United States may then prosecute the corporation and any individual for law violations which the United States had otherwise promised in this agreement not to pursue.

11. Even if the corporation breaches this agreement, should the corporation be convicted of any of the crimes in the Indictment filed in this case, the United States must still, in conformity with procedures specified in paragraph five of this agreement, bring to the attention of the sentencing court any acts of prior or ongoing cooperation provided by the corporation.

12. Since the corporation's acceptance of this agreement terminates all plea discussions with the United States Attorney for the District of Nebraska, or his designate, any statements made by representatives of the corporation after the date of the acceptance of this agreement are not governed by Rule 11(e)(6) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence.

13. In addition to criminal prosecution purposes, the United States can use against the corporation any disclosure(s) the corporation or representatives thereof have made pursuant to this agreement in any civil proceeding or for any sentencing purpose.

14. Except as provided in the Settlement Agreements, nothing contained in this agreement shall in any manner limit civil liability of the corporation which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing against the corporation or any individual any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

15. The plea agreement proposed herein may be withdrawn by the United States Attorney for the

3

District of Nebraska, or his designate, at any time prior to acceptance by the corporation. Acceptance is deemed to occur when this document has been signed by a director or officer of the corporation and the corporation's attorney, and the undersigned Assistant United States Attorney, and has been stamped as received in the offices of the United States Attorney for the District of Nebraska. In addition, if the United States Attorney for the District of Nebraska, or his designate, has not received this agreement back from the corporation, properly executed, at the offices of the United States Attorney for the District of Nebraska on or before **May 20 2006**, this proposed plea agreement is automatically withdrawn.

18. No promises, agreements, or conditions have been entered into other than those set forth in this document, and none will be entered into unless in writing and signed by all parties.

5-8-06
Date

Officer or Authorized Agent
Springer Magrath Co. Inc.
Defendant

Date

WILLIAM DITTRICK
Attorney for Springer Magrath

6-14-06
Date

STEVEN A. RUSSELL
Assistant U.S. Attorney

4

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Marlin Springer
President
The Springer Magrath Company
404 West B Street
McCook, Nebraska 69001

      Attn:   *Marlin Springer*
              *President*

Dear Mr. Springer:

The Bureau of Industry and Security, U.S. Department of Commerce ("BIS"), has reason to believe that you, Marlin Springer, acting as President of The Springer Magrath Company of McCook, Nebraska, in your individual capacity ("Springer") have committed 40 violations of the Export Administration Regulations (the "Regulations"),[1] which are issued under the authority of the Export Administration Act of 1979 as amended (the "Act").[2]  Specifically, BIS charges that Springer committed the following violations:

**Charges 1-18**      **15 C.F.R. § 764.2(a) - Exports of Cattle Prods without the Required Licenses**

As described in greater detail in the Schedule of Violations, which is enclosed herewith and incorporated herein by reference, on 18 occasions, from on or about January 5, 2001 through on or about August 26, 2002, Springer, acting as President of The Springer Magrath Company, engaged in conduct prohibited by the Regulations by exporting cattle prods (shaft assemblies, power packs and stock shocks), items subject to the Regulations and classified under export control classification number ("ECCN") 0A985, from the United States to various destinations,

---

[1] The Regulations are currently codified in the Code of Federal Regulations at 15 C.F.R. Parts 730-774 (2005).  The charged violations occurred from 2001 through 2002.  The Regulations governing the violations at issue are found in the 2001 - 2002 versions of the Code of Federal Regulations (15 C.F.R. Parts 730-774 (2001-2002)).  The 2005 Regulations establish the procedures that apply to this matter.

[2] Since August 21, 2001, the Act has been in lapse and the President, through Executive Order 13222 of August 17, 2001 (3 C.F.R., 2001 Comp. 783 (2002)), as extended most recently by the Notice of August 2, 2005, (70 Fed. Reg. 45273 (August 5, 2005)), has continued the Regulations in effect under the International Emergency Economic Powers Act (50 U.S.C. §§ 1701 - 1706 (2000)) ("IEEPA").

- 2778.1

Marlin Springer
Proposed Charging Letter
Page 2 of 4

including Ireland, South Africa and Mexico, without the Department of Commerce licenses
required by Section 742.7 of the Regulations. In doing so, Springer committed 18 violations of
Section 764.2(a) of the Regulations

**Charges 19-20**      **15 C.F.R. § 764.2(c) - Attempting Exports of Cattle Prods without the
Required Licenses**

As described in greater detail in the Schedule of Violations, which is enclosed herewith and
incorporated herein by reference, on two occasions, on or about December 6, 2001 and on or
about August 12, 2002, Springer, acting as President of The Springer Magrath Company,
attempted violations of the Regulations by attempting to export cattle prods, items subject to the
Regulations and classified under ECCN 0A985, from the United States to Ireland and Mexico,
respectively, without the Department of Commerce licenses required by Section 742.7 of the
Regulations. In doing so, Springer committed two violations of Section 764.2(c) of the
Regulations.

**Charges 21-40**      **15 C.F.R. § 764.2(e) - Selling Cattle Prods Knowing that Violations of
the Regulations were to Occur**

As described in greater detail in the Schedule of Violations, which is enclosed herewith and
incorporated herein by reference, on 20 occasions from on or about January 5, 2001 through on
or about August 26, 2002, Springer, acting as President of The Springer Magrath Company, sold
cattle prods, items subject to the Regulations and classified under ECCN 0A985, knowing that
they were to be exported from the United States in violation of the Regulations. At all times
relevant hereto, Springer knew that Department of Commerce export licenses were required to
export the cattle prods and knew that the licenses would not be obtained. In doing so, Springer
committed 20 violations of Section 764.2(e) of the Regulations.

* * * *

Accordingly, Springer is hereby notified that an administrative proceeding is instituted against
him pursuant to Part 766 of the Regulations for the purpose of obtaining an order imposing
administrative sanctions, including any or all of the following:

The maximum civil penalty allowed by law of $11,000 per violation;[3]

Denial of export privileges; and/or

---

[3] *See* 15 C.F.R. § 6.4(a)(2).

- 2778.1

Marlin Springer
Proposed Charging Letter
Page 3 of 4

Exclusion from practice before BIS.

If Springer fails to answer the charges contained in this letter within 30 days after being served with notice of issuance of this letter, that failure will be treated as a default. *See* 15 C.F.R. §§ 766.6 and 766.7. If Springer defaults, the Administrative Law Judge may find the charges alleged in this letter are true without a hearing or further notice to Springer. *See id.* The Under Secretary for Industry and Security may then impose up to the maximum penalty on the charges in this letter. *See id.*

Springer is further notified that he is entitled to an agency hearing on the record if he files a written demand for one with his answer. *See* 15 C.F.R. § 766.6. Springer is also entitled to be represented by counsel or other authorized representative who has power of attorney to represent him. *See* 15 C.F.R. §§ 766.3(a) and 766.4.

The Regulations provide for settlement without a hearing. *See* 15 C.F.R. § 766.18. Should Springer have a proposal to settle this case, he or his representative should transmit it to me through the attorney representing BIS named below.

The U.S. Coast Guard is providing administrative law judge services in connection with the matters set forth in this letter. Accordingly, Springer's answer must be filed in accordance with the instructions set forth in Section 766.5(a) of the Regulations with:

U.S. Coast Guard ALJ Docketing Center
40 S. Gay Street
Baltimore, Maryland 21202-4022

In addition, a copy of Springer's answer must be served on BIS at the following address:

Chief Counsel for Industry and Security
Attention: Melissa B. Mannino
Room H-3839
United States Department of Commerce
14th Street and Constitution Avenue, N.W.
Washington, D.C. 20230

-2778.1

Marlin Springer
Proposed Charging Letter
Page 4 of 4

Melissa B. Mannino is the attorney representing BIS in this case.  Any communications that Springer may wish to have concerning this matter should occur through her.  She may be contacted by telephone at (202) 482-5301.


Sincerely,



Michael D. Turner
Director
Office of Export Enforcement

UNITED STATES DEPARTMENT OF COMMERCE
BUREAU OF INDUSTRY AND SECURITY
WASHINGTON, D.C. 20230

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| Marlin Springer | ) |
| President | ) |
| The Springer Magrath Company | ) |
| 404 West B Street | ) |
| McCook, Nebraska 69001 | ) |
| | ) |
| Respondent | ) |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made by and between Marlin Springer,

President of The Springer Magrath Company, in his individual capacity ("Springer"), and the

Bureau of Industry and Security, U.S. Department of Commerce ("BIS") (collectively referred to

as "Parties"), pursuant to Section 766.18(a) of the Export Administration Regulations (currently

codified at 15 C.F.R. Parts 730-774 (2005)) ("Regulations"),[1] issued pursuant to the Export

Administration Act of 1979, as amended (50 U.S.C. app. §§ 2401-2420 (2000)) ("Act"),[2]

WHEREAS, BIS has notified Springer of its intention to initiate an administrative

proceeding against Springer, pursuant to the Act and the Regulations;

---

[1] The charged violations occurred from 2001 through 2002. The Regulations governing the violations at issue are found in the 2001 - 2002 versions of the Code of Federal Regulations (15 C.F.R. Parts 730-774 (2001-2002)). The 2005 Regulations establish the procedures that apply to this matter.

[2] Since August 21, 2001, the Act has been in lapse and the President, through Executive Order 13222 of August 17, 2001 (3 C.F.R., 2001 Comp. 783 (2002)), as extended most recently by the Notice of August 2, 2005, (70 Fed. Reg. 45273 (August 5, 2005)), has continued the Regulations in effect under the International Emergency Economic Powers Act (50 U.S.C. §§ 1701 - 1706 (2000)) ("IEEPA").

WHEREAS, BIS has issued a proposed charging letter to Springer that alleged that Springer committed 40 violations of the Regulations, specifically:

1.  *Eighteen Violations of 15 C.F.R. § 764.2(a) - Exports of Cattle Prods without the Required Licenses:* On 18 occasions, from on or about January 5, 2001 through on or about August 26, 2002, Springer, as President of The Springer Magrath Company, engaged in conduct prohibited by the Regulations by exporting cattle prods (shaft assemblies, power packs and stock shocks), items subject to the Regulations and classified under export control classification number ("ECCN") 0A985, from the United States to various destinations, including Ireland, South Africa and Mexico, without the Department of Commerce licenses required by Section 742.7 of the Regulations.

2.  *Two Violations of 15 C.F.R. 764.2(c) - Attempting Exports of Cattle Prods without the Required Licenses:* On two occasions, on or about December 6, 2001 and on or about August 12, 2002, Springer, as President of The Springer Magrath Company, attempted violations of the Regulations by attempting to export cattle prods, items subject to the Regulations and classified under ECCN 0A985, from the United States to Ireland and Mexico, respectively, without the Department of Commerce licenses required by Section 742.7 of the Regulations.

3.  *20 Violations of 15 C.F.R. § 764.2(e) - Selling Cattle Prods Knowing that Violations of the Regulations were to Occur:* On 20 occasions from on or about January 5, 2001 through on or about August 26, 2002, Springer, as President of The Springer Magrath Company, sold cattle prods, items subject to the

Regulations and classified under ECCN 0A985, knowing that they were to be exported from the United States in violation of the Regulations. At all times relevant hereto, Springer knew that Department of Commerce export licenses were required to export the cattle prods and knew that the licenses would not be obtained.

WHEREAS, Springer has reviewed the proposed charging letter and is aware of the allegations made against him and the administrative sanctions which could be imposed against him if the allegations are found to be true;

WHEREAS, Springer fully understands the terms of this Agreement and the Order ("Order") that the Assistant Secretary of Commerce for Export Enforcement will issue if he approves this Agreement as the final resolution of this matter;

WHEREAS, Springer enters into this Agreement voluntarily and with full knowledge of his rights;

WHEREAS, Springer states that no promises or representations have been made to him other than the agreements and considerations herein expressed;

WHEREAS, Springer neither admits nor denies the allegations contained in the proposed charging letter;

WHEREAS, Springer wishes to settle and dispose of all matters alleged in the proposed charging letter by entering into this Agreement; and

WHEREAS, Springer agrees to be bound by the Order, if entered;

NOW THEREFORE, the Parties hereby agree as follows:

1. BIS has jurisdiction over Springer, under the Regulations, in connection with the matters alleged in the proposed charging letter.

2. The following sanction shall be imposed against Springer in complete settlement of the violations of the Regulations set forth in the proposed charging letter:

a.     For a period three years from the date of entry of the Order, Springer, and, when acting for or on behalf of Springer, his representatives, agents, assigns, or employees ("Denied Person") may not participate, directly or indirectly, in any way in any transaction involving any commodity, software or technology (hereinafter collectively referred to as "item") exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations, including, but not limited to:

i.     Applying for, obtaining, or using any license, License Exception, or export control document;

ii.    Carrying on negotiations concerning, or ordering, buying, receiving, using, selling, delivering, storing, disposing of, forwarding, transporting, financing, or otherwise servicing in any way, any transaction involving any item exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations; or

iii.   Benefitting in any way from any transaction involving any item exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations.

b.      BIS agrees that, as authorized by Section 766.18 (c) of the Regulations, the three

year denial period set forth in paragraph 2.a. shall be suspended in its entirety for a

period of one year from the entry of the appropriate Order, and shall thereafter be

waived, provided that during the period of suspension, Springer has committed no

violation of the Act or any regulation, order or license issued thereunder.

3. Subject to the approval of this Agreement pursuant to paragraph 8 hereof, Springer

hereby waives all rights to further procedural steps in this matter (except with respect to any

alleged violations of this Agreement or the Order, if entered), including, without limitation, any

right to: (a) an administrative hearing regarding the allegations in the proposed charging letter;

(b) request a refund of any civil penalty paid pursuant to this Agreement and the Order, if

entered; (c) request any relief from the Order, if entered, including without limitation relief from

the terms of a denial order under 15 C.F.R. § 764.3(a)(2); and (d) seek judicial review or

otherwise contest the validity of this Agreement or the Order, if entered.

4. BIS agrees that, upon entry of the Order, it will not initiate any further administrative

proceeding against Springer in connection with any violation of the Act or the Regulations

arising out of the transactions identified in the proposed charging letter.

5. BIS will make the proposed charging letter, this Agreement, and the Order, if entered,

available to the public.

6. This Agreement is for settlement purposes only. Therefore, if this Agreement is not

accepted and the Order is not issued by the Assistant Secretary of Commerce for Export

Enforcement pursuant to Section 766.18(a) of the Regulations, no Party may use this Agreement

in any administrative or judicial proceeding and the Parties shall not be bound by the terms contained in this Agreement in any subsequent administrative or judicial proceeding.

7. No agreement, understanding, representation or interpretation not contained in this Agreement may be used to vary or otherwise affect the terms of this Agreement or the Order, if entered, nor shall this Agreement serve to bind, constrain, or otherwise limit any action by any other agency or department of the U.S. Government with respect to the facts and circumstances addressed herein.

8. This Agreement shall become binding on BIS only if the Assistant Secretary of Commerce for Export Enforcement approves it by entering the Order, which will have the same force and effect as a decision and order issued after a full administrative hearing on the record.

9. Each signatory affirms that he has authority to enter into this Settlement Agreement and to bind his respective party to the terms and conditions set forth herein.

BUREAU OF INDUSTRY AND SECURITY
U.S. DEPARTMENT OF COMMERCE

MARLIN SPRINGER

_____

Michael D. Turner
Director
Office of Export Enforcement

Date:_____

_____

Marlin Springer
President, The Springer Magrath Company

Date:_____

Settlement Agreement
Marlin Springer
Page 6 of 6

-1154]v1

UNITED STATES DEPARTMENT OF COMMERCE
BUREAU OF INDUSTRY AND SECURITY
WASHINGTON, D.C. 20230

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| Marlin Springer | ) |
| President | ) |
| The Springer Magrath Company | ) |
| 404 West B Street | ) |
| McCook, Nebraska 69001 | ) |
| | ) |
| Respondent | ) |

## ORDER RELATING TO MARLIN SPRINGER

The Bureau of Industry and Security, U.S. Department of Commerce ("BIS") having

notified Marlin Springer, as President of The Springer Magrath Company, in his individual

capacity ("Springer") of its intention to initiate an administrative proceeding against Springer

pursuant to Section 766.3 of the Export Administration Regulations (currently codified at 15

C.F.R. Parts 730-774 (2005)) ("Regulations"),[1] and Section 13(c) of the Export Administration

Act of 1979, as amended (50 U.S.C. app. §§ 2401-2420 (2000)) ("Act"),[2] by issuing a proposed

charging letter to Springer that alleged that Springer committed 40 violations of the Regulations.

Specifically, the charges are:

---

[1]   The charged violations occurred from 2001 through 2002. The Regulations governing the
violations at issue are found in the 2001 - 2002 versions of the Code of Federal Regulations (15
C.F.R. Parts 730-774 (2001-2002)). The 2005 Regulations establish the procedures that apply to
this matter.

[2]   Since August 21, 2001, the Act has been in lapse and the President, through Executive
Order 13222 of August 17, 2001 (3 C.F.R., 2001 Comp. 783 (2002)), as extended most recently
by the Notice of August 2, 2005, (70 Fed. Reg. 45273 (August 5, 2005)), has continued the
Regulations in effect under the International Emergency Economic Powers Act (50 U.S.C. §§
1701 - 1706 (2000)) ("IEEPA").

1. *Eighteen Violations of 15 C.F.R. § 764.2(a) - Exports of Cattle Prods without the Required Licenses:* On 18 occasions, from on or about January 5, 2001 through on or about August 26, 2002, Springer, as President of The Springer Magrath Company, engaged in conduct prohibited by the Regulations by exporting cattle prods (shaft assemblies, power packs and stock shocks), items subject to the Regulations and classified under export control classification number ("ECCN") 0A985, from the United States to various destinations, including Ireland, South Africa and Mexico, without the Department of Commerce licenses required by Section 742.7 of the Regulations.

2. *Two Violations of 15 C.F.R. 764.2(c) - Attempting Exports of Cattle Prods without the Required Licenses:* On two occasions, on or about December 6, 2001 and on or about August 12, 2002, Springer, as President of The Springer Magrath Company, attempted violations of the Regulations by attempting to export cattle prods, items subject to the Regulations and classified under ECCN 0A985, from the United States to Ireland and Mexico, respectively, without the Department of Commerce licenses required by Section 742.7 of the Regulations.

3. *20 Violations of 15 C.F.R. § 764.2(e) - Selling Cattle Prods Knowing that Violations of the Regulations were to Occur:* On 20 occasions from on or about January 5, 2001 through on or about August 26, 2002, Springer, as President of The Springer Magrath Company, sold cattle prods, items subject to the Regulations and classified under ECCN 0A985, knowing that they were to be exported from the United States in violation of the Regulations. At all times relevant hereto, Springer knew that Department of Commerce export licenses

Order
Marlin Springer
Page 2 of 5

were required to export the cattle prods and knew that the licenses would not be

obtained.

WHEREAS, BIS and Springer have entered into a Settlement Agreement pursuant to

Section 766.18(a) of the Regulations whereby they agreed to settle this matter in accordance with

the terms and conditions set forth therein, and

WHEREAS, I have approved of the terms of such Settlement Agreement;

IT IS THEREFORE ORDERED:

FIRST, for a period three years from the date of entry of the Order, Marlin Springer,

President of The Springer Magrath Company, 404 West B Street, McCook, Nebraska 69001, and

when acting for or on behalf of Springer, his representatives, agents, assigns or employees

("Denied Person") may not participate, directly or indirectly, in any way in any transaction

involving any commodity, software or technology (hereinafter collectively referred to as "item")

exported or to be exported from the United States that is subject to the Regulations, or in any

other activity subject to the Regulations, including, but not limited to:

A.   Applying for, obtaining, or using any license, License Exception, or export control
     document;

B.   Carrying on negotiations concerning, or ordering, buying, receiving, using,
     selling, delivering, storing, disposing of, forwarding, transporting, financing, or
     otherwise servicing in any way, any transaction involving any item exported or to
     be exported from the United States that is subject to the Regulations, or in any
     other activity subject to the Regulations; or

Order
Marlin Springer
Page 3 of 5

C.    Benefitting in any way from any transaction involving any item exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations.

SECOND, that no person may, directly or indirectly, do any of the following:

A.    Export or reexport to or on behalf of the Denied Person any item subject to the Regulations;

B.    Take any action that facilitates the acquisition or attempted acquisition by the Denied Person of the ownership, possession, or control of any item subject to the Regulations that has been or will be exported from the United States, including financing or other support activities related to a transaction whereby the Denied Person acquires or attempts to acquire such ownership, possession or control;

C.    Take any action to acquire from or to facilitate the acquisition or attempted acquisition from the Denied Person of any item subject to the Regulations that has been exported from the United States;

D.    Obtain from the Denied Person in the United States any item subject to the Regulations with knowledge or reason to know that the item will be, or is intended to be, exported from the United States; or

E.    Engage in any transaction to service any item subject to the Regulations that has been or will be exported from the United States and which is owned, possessed or controlled by the Denied Person, or service any item, of whatever origin, that is owned, possessed or controlled by the Denied Person if such service involves the use of any item subject to the Regulations that has been or will be exported from

Order
Marlin Springer
Page 4 of 5

the United States. For purposes of this paragraph, servicing means installation, maintenance, repair, modification or testing.

THIRD, that, to prevent evasion of this Order, BIS, after notice and opportunity for comment as provided in Section 766.23 of the Regulations, may make any person, firm, corporation, or business organization related to Springer by affiliation, ownership, control, or position of responsibility in the conduct of trade or related services subject to the provisions of this Order.

FOURTH, that this Order does not prohibit any export, reexport, or other transaction subject to the Regulations where the only items involved that are subject to the Regulations are the foreign-produced direct product of U.S.-origin technology.

FIFTH, that, as authorized by Section 766.18 (c) of the Regulations, the denial period set forth above shall be suspended in its entirety for one year from the date of this Order, and shall thereafter be waived, provided that during the period of suspension, Springer has committed no violation of the Act or any regulation, order or license issued thereunder.

SIXTH, that the proposed charging letter, the Settlement Agreement, and this Order shall be made available to the public.

This Order, which constitutes the final agency action in this matter, is effective immediately.


_____
Darryl W. Jackson
Assistant Secretary of Commerce
for Export Enforcement


Entered this _____ day of _____ 2006.


Order
Marlin Springer
Page 5 of 5

<u>PROPOSED CHARGING LETTER</u>

<u>CERTIFIED MAIL - RETURN RECEIPT REQUESTED</u>

The Springer Magrath Company
404 West B Street
McCook, Nebraska 69001

      Attn:  *Marlin Springer*
              *President*

Dear Mr. Springer:

The Bureau of Industry and Security, U.S. Department of Commerce ("BIS"), has reason to
believe that The Springer Magrath Company of McCook, Nebraska ("Springer Magrath") has
committed 41 violations of the Export Administration Regulations (the "Regulations"),[1] which
are issued under the authority of the Export Administration Act of 1979, as amended (the
"Act").[2] Specifically, BIS charges that Springer Magrath committed the following violations:

**Charges 1-18**        **15 C.F.R. § 764.2(a) - Exports of Cattle Prods without the Required**
                        **Licenses**

As described in greater detail in the Schedule of Violations, which is enclosed herewith and
incorporated herein by reference, on 18 occasions, from on or about January 5, 2001 through on
or about August 26, 2002, Springer Magrath engaged in conduct prohibited by the Regulations
by exporting cattle prods (shaft assemblies, power packs and stock shocks), items subject to the
Regulations and classified under export control classification number ("ECCN") 0A985, from
the United States to various destinations, including Ireland, South Africa and Mexico, without
the Department of Commerce licenses required by Section 742.7 of the Regulations. In doing so,
Springer Magrath committed 18 violations of Section 764.2(a) of the Regulations

---

    [1] The Regulations are currently codified in the Code of Federal Regulations at
15 C.F.R. Parts 730-774 (2005). The charged violations occurred from 2001 through 2002. The
Regulations governing the violations at issue are found in the 2001 - 2002 versions of the Code
of Federal Regulations (15 C.F.R. Parts 730-774 (2001-2002)). The 2005 Regulations establish
the procedures that apply to this matter.

    [2] Since August 21, 2001, the Act has been in lapse and the President, through Executive
Order 13222 of August 17, 2001 (3 C.F.R., 2001 Comp. 783 (2002)), as extended by the Notice
of August 2, 2005, (70 Fed. Reg. 45273 (August 5, 2005)), has continued the Regulations in
effect under the International Emergency Economic Powers Act (50 U.S.C. §§ 1701 - 1706
(2000)) ("IEEPA").

- 2646.3

The Springer Magrath Company
Proposed Charging Letter
Page 2 of 4

**Charges 19-20**    **15 C.F.R. § 764.2(c) - Attempting Exports of Cattle Prods without the Required Licenses**

As described in greater detail in the Schedule of Violations, which is enclosed herewith and incorporated herein by reference, on two occasions, on or about December 6, 2001 and on or about August 12, 2002, Springer Magrath attempted violations of the Regulations by attempting to export cattle prods, items subject to the Regulations and classified under ECCN 0A985, from the United States to Ireland and Mexico, respectively, without the Department of Commerce licenses required by Section 742.7 of the Regulations. In doing so, Springer Magrath committed two violations of Section 764.2(c) of the Regulations.

**Charges 21-40**    **15 C.F.R. § 764.2(e) - Selling Cattle Prods Knowing that Violations of the Regulations were to Occur**

As described in greater detail in the Schedule of Violations, which is enclosed herewith and incorporated herein by reference, on 20 occasions from on or about January 5, 2001 through on or about August 26, 2002, Springer Magrath sold cattle prods, items subject to the Regulations and classified under ECCN 0A985, knowing that they were to be exported from the United States in violation of the Regulations. At all times relevant hereto, Springer Magrath knew that Department of Commerce export licenses were required to export the cattle prods and knew that the licenses would not be obtained. In doing so, Springer Magrath committed 20 violations of Section 764.2(e) of the Regulations.

**Charge 41**    **15 C.F.R. §764.2(g) - False Statement to an Office of Export Enforcement Special Agent in the Course of an Investigation**

On or about August 26, 2003, in connection with an ongoing BIS, Office of Export Enforcement ("OEE") investigation into the unauthorized export of cattle prods, items subject to the Regulations, Springer Magrath represented to an OEE Special Agent that it only exported items to South Africa. This statement was false as Springer Magrath exported cattle prods to various destinations, including Ireland, Mexico, and Brazil. In doing so, Springer Magrath committed one violation of Section 764.2(g) of the Regulations.

* * * *

Accordingly, Springer Magrath is hereby notified that an administrative proceeding is instituted against it pursuant to Part 766 of the Regulations for the purpose of obtaining an order imposing administrative sanctions, including any or all of the following:

- 2646.3

The Springer Magrath Company
Proposed Charging Letter
Page 3 of 4

The maximum civil penalty allowed by law of $11,000 per violation;[3]

Denial of export privileges; and/or

Exclusion from practice before BIS.

If Springer Magrath fails to answer the charges contained in this letter within 30 days after being served with notice of issuance of this letter, that failure will be treated as a default. *See* 15 C.F.R. §§ 766.6 and 766.7. If Springer Magrath defaults, the Administrative Law Judge may find the charges alleged in this letter are true without a hearing or further notice to Springer Magrath. *See id.* The Under Secretary for Industry and Security may then impose up to the maximum penalty on the charges in this letter. *See id.*

Springer Magrath is further notified that it is entitled to an agency hearing on the record if Springer Magrath files a written demand for one with its answer. *See* 15 C.F.R. § 766.6. Springer Magrath is also entitled to be represented by counsel or other authorized representative who has power of attorney to represent it. *See* 15 C.F.R. §§ 766.3(a) and 766.4.

The Regulations provide for settlement without a hearing. *See* 15 C.F.R. § 766.18. Should Springer Magrath have a proposal to settle this case, Springer Magrath or its representative should transmit it to me through the attorney representing BIS named below.

The U.S. Coast Guard is providing administrative law judge services in connection with the matters set forth in this letter. Accordingly, Springer Magrath's answer must be filed in accordance with the instructions set forth in Section 766.5(a) of the Regulations with:

U.S. Coast Guard ALJ Docketing Center
40 S. Gay Street
Baltimore, Maryland  21202-4022

In addition, a copy of Springer Magrath's answer must be served on BIS at the following address:

Chief Counsel for Industry and Security
Attention: Melissa B. Mannino
Room H-3839
United States Department of Commerce
14th Street and Constitution Avenue, N.W.
Washington, D.C.  20230

---

[3] *See* 15 C.F.R. § 6.4(a)(2).

- 2646.3

The Springer Magrath Company
Proposed Charging Letter
Page 4 of 4


Melissa B. Mannino is the attorney representing BIS in this case.  Any communications that Springer Magrath may wish to have concerning this matter should occur through her.  She may be contacted by telephone at (202) 482-5301.

Sincerely,



Michael D. Turner
Director
Office of Export Enforcement

- 2646.3

UNITED STATES DEPARTMENT OF COMMERCE
BUREAU OF INDUSTRY AND SECURITY
WASHINGTON, D.C.  20230

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| The Springer Magrath Company | ) |
| 404 West B Street | ) |
| McCook, Nebraska 69001 | ) |
| | ) |
| Respondent | ) |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made by and between The Springer

Magrath Company ("Springer Magrath"), and the Bureau of Industry and Security, U.S.

Department of Commerce ("BIS") (collectively referred to as "Parties"), pursuant to Section

766.18(a) of the Export Administration Regulations (currently codified at 15 C.F.R. Parts 730-

774 (2005)) ("Regulations")[1], issued pursuant to the Export Administration Act of 1979, as

amended (50 U.S.C. app. §§ 2401-2420 (2000)) ("Act")[2],

WHEREAS, BIS has notified Springer Magrath of its intention to initiate an

administrative proceeding against Springer Magrath, pursuant to the Act and the Regulations;

---

[1] The charged violations occurred from 2001 through 2002.  The Regulations governing
the violations at issue are found in the 2001 - 2002 versions of the Code of Federal Regulations
(15 C.F.R. Parts 730-774 (2001-2002)).  The 2005 Regulations establish the procedures that
apply to this matter.

[2] Since August 21, 2001, the Act has been in lapse and the President, through Executive
Order 13222 of August 17, 2001 (3 C.F.R., 2001 Comp. 783 (2002)), as extended most recently
by the Notice of August 2, 2005, (70 Fed. Reg. 45273 (August 5, 2005)), has continued the
Regulations in effect under International Emergency Economic Powers Act (50 U.S.C. §§ 1701 -
1706 (2000)) ("IEEPA").

-11535

WHEREAS, BIS has issued a proposed charging letter to Springer Magrath that alleged that Springer Magrath committed 41 violations of the Regulations, specifically:

1.  *Eighteen Violations of 15 C.F.R. § 764.2(a) - Exports of Cattle Prods without the Required Licenses:* On 18 occasions, from on or about January 5, 2001 through on or about August 26, 2002, Springer Magrath engaged in conduct prohibited by the Regulations by exporting cattle prods (shaft assemblies, power packs and stock shocks), items subject to the Regulations and classified under export control classification number ("ECCN") 0A985, from the United States to various destinations, including Ireland, South Africa and Mexico, without the Department of Commerce licenses required by Section 742.7 of the Regulations.

2.  *Two Violations of 15 C.F.R. § 764.2(c) - Attempting Exports of Cattle Prods without the Required Licenses:* On two occasions, on or about December 6, 2001 and on or about August 12, 2002, Springer Magrath attempted violations of the Regulations by attempting to export cattle prods, items subject to the Regulations and classified under ECCN 0A985, from the United States to Ireland and Mexico, respectively, without the Department of Commerce licenses required by Section 742.7 of the Regulations.

3.  *Twenty Violations of 15 C.F.R. § 764.2(e) - Selling Cattle Prods Knowing that Violations of the Regulations were to Occur:* On 20 occasions from on or about January 5, 2001 through on or about August 26, 2002, Springer Magrath sold cattle prods, items subject to the Regulations and classified under ECCN 0A985,

knowing that they were to be exported from the United States in violation of the Regulations. At all times relevant hereto, Springer Magrath knew that Department of Commerce export licenses were required to export the cattle prods and knew that the licenses would not be obtained.

4. *One Violation of 15 C.F.R. §764.2(g) - False Statement to an Office of Export Enforcement Special Agent in the Course of an Investigation.* On or about August 26, 2003, in connection with an ongoing BIS, Office of Export Enforcement ("OEE") investigation into the unauthorized export of cattle prods, items subject to the Regulations, Springer Magrath represented to an OEE Special Agent that it only exported items to South Africa. This statement was false as Springer Magrath exported cattle prods to various destinations, including Ireland, Mexico, and Brazil.

WHEREAS, Springer Magrath has reviewed the proposed charging letter and is aware of the allegations made against it and the administrative sanctions which could be imposed against it if the allegations are found to be true;

WHEREAS, Springer Magrath fully understands the terms of this Agreement and the Order ("Order") that the Assistant Secretary of Commerce for Export Enforcement will issue if he approves this Agreement as the final resolution of this matter;

WHEREAS, Springer Magrath enters into this Agreement voluntarily and with full knowledge of its rights;

WHEREAS, the parties enter into this Agreement having taken into consideration the plea agreement that Springer Magrath entered into with the U.S. Attorney for the District of Nebraska in the related criminal case No. [     ];

WHEREAS, Springer Magrath states that no promises or representations have been made to it other than the agreements and considerations herein expressed;

WHEREAS, Springer Magrath neither admits nor denies the allegations contained in the proposed charging letter;

WHEREAS, Springer Magrath wishes to settle and dispose of all matters alleged in the proposed charging letter by entering into this Agreement; and

WHEREAS, Springer Magrath agrees to be bound by the Order, if entered;

NOW THEREFORE, the Parties hereby agree as follows:

1.  BIS has jurisdiction over Springer Magrath, under the Regulations, in connection with the matters alleged in the proposed charging letter.

2.  The following sanctions shall be imposed against Springer Magrath in complete settlement of the violations of the Regulations set forth in the proposed charging letter:

    a.  Springer Magrath shall be assessed a civil penalty in the amount of $451,000, which shall be paid to the U.S. Department of Commerce within 30 days from the date of entry of the Order.

    b.  The timely payment of the civil penalty agreed to in paragraph 2.a. is hereby made a condition to the granting, restoration, or continuing validity of any export license, permission, or privilege granted, or to be granted, to Springer Magrath. Failure to make timely payment of the civil penalty set forth above shall result in

the denial of all of Springer Magrath's export privileges for a period of one year

from the date of imposition of the penalty. The timely payment of the civil

penalty is guaranteed by Marlin Springer, the President of Springer Magrath, in

his individual capacity. Marlin Springer, in his individual capacity, and Springer

Magrath are jointly and severally liable for timely payment of the fine.

c.     For a period of three years from the date of entry of the Order, Springer Magrath,

its successors or assigns, and, when acting for or on behalf of Springer Magrath,

its officers, representatives, agents, or employees ("Denied Person") may not

participate, directly or indirectly, in any way in any transaction involving any

commodity, software or technology (hereinafter collectively referred to as "item")

exported or to be exported from the United States that is subject to the

Regulations, or in any other activity subject to the Regulations, including, but not

limited to:

i.     Applying for, obtaining, or using any license, License Exception, or export

control document;

ii.    Carrying on negotiations concerning, or ordering, buying, receiving, using,

selling, delivering, storing, disposing of, forwarding, transporting,

financing, or otherwise servicing in any way, any transaction involving any

item exported or to be exported from the United States that is subject to

the Regulations, or in any other activity subject to the Regulations; or

iii.     Benefitting in any way from any transaction involving any item exported

or to be exported from the United States that is subject to the Regulations,

or in any other activity subject to the Regulations.

d. BIS agrees that, as authorized by Section 766.18 (c) of the Regulations, the three year

denial period set forth in paragraph 2.c. shall be suspended in its entirety for a period of one year

from the entry of the appropriate Order, and shall thereafter be waived, provided that during the

period of suspension, Springer Magrath has committed no violation of the Act or any regulation,

order or license issued thereunder, and, provided further that Springer Magrath or Marlin

Springer has made timely payment of the $451,000 civil penalty assessed pursuant to this

Agreement and the Order.

3.  Subject to the approval of this Agreement pursuant to paragraph 8 hereof, Springer

Magrath hereby waives all rights to further procedural steps in this matter (except with respect to

any alleged violations of this Agreement or the Order, if entered), including, without limitation,

any right to: (a) an administrative hearing regarding the allegations in the proposed charging

letter; (b) request a refund of any civil penalty paid pursuant to this Agreement and the Order, if

entered; (c) request any relief from the Order, if entered, including without limitation relief from

the terms of a denial order under 15 C.F.R. § 764.3(a)(2); and (d) seek judicial review or

otherwise contest the validity of this Agreement or the Order, if entered.

4.  Upon entry of the Order and timely payment of the $451,000 civil penalty, BIS will

not initiate any further administrative proceeding against Springer Magrath in connection with

any violation of the Act or the Regulations arising out of the transactions identified in the

proposed charging letter.

Settlement Agreement
Springer Magrath
Page 6 of 7

-11535

5. BIS will make the proposed charging letter, this Agreement, and the Order, if entered, available to the public.

6. This Agreement is for settlement purposes only. Therefore, if this Agreement is not accepted and the Order is not issued by the Assistant Secretary of Commerce for Export Enforcement pursuant to Section 766.18(a) of the Regulations, no Party may use this Agreement in any administrative or judicial proceeding and the Parties shall not be bound by the terms contained in this Agreement in any subsequent administrative or judicial proceeding.

7. No agreement, understanding, representation or interpretation not contained in this Agreement may be used to vary or otherwise affect the terms of this Agreement or the Order, if entered, nor shall this Agreement serve to bind, constrain, or otherwise limit any action by any other agency or department of the U.S. Government with respect to the facts and circumstances addressed herein.

8. This Agreement shall become binding on BIS only if the Assistant Secretary of Commerce for Export Enforcement approves it by entering the Order, which will have the same force and effect as a decision and order issued after a full administrative hearing on the record.

9. Each signatory affirms that he has authority to enter into this Settlement Agreement and to bind his respective party to the terms and conditions set forth herein.

BUREAU OF INDUSTRY AND SECURITY          THE SPRINGER MAGRATH COMPANY
U.S. DEPARTMENT OF COMMERCE

_____          _____
Michael D. Turner                        Marlin Springer, in his Capacity as
Director                                 President of The Springer Magrath Company
Office of Export Enforcement             and in his individual capacity as guarantor

Date:_____             Date:_____

Settlement Agreement
Springer Magrath
Page 7 of 7

-11535

UNITED STATES DEPARTMENT OF COMMERCE
BUREAU OF INDUSTRY AND SECURITY
WASHINGTON, D.C.  20230

In the Matter of:                           )
                                            )
The Springer Magrath Company                )
404 West B Street                           )
McCook, Nebraska 69001                      )
                                            )
          Respondent                        )

## ORDER RELATING TO THE SPRINGER MAGRATH COMPANY

The Bureau of Industry and Security, U.S. Department of Commerce ("BIS") having

notified The Springer Magrath Company ("Springer Magrath") of its intention to initiate an

administrative proceeding against Springer Magrath pursuant to Section 766.3 of the Export

Administration Regulations (currently codified at 15 C.F.R. Parts 730-774 (2005))

("Regulations"),[1] and Section 13(c) of the Export Administration Act of 1979, as amended (50

U.S.C. app. §§ 2401-2420 (2000)) ("Act"),[2] by issuing a proposed charging letter to Springer

Magrath that alleged that Springer Magrath committed 41 violations of the Regulations.

Specifically, the charges are:

1.     *Eighteen Violations of 15 C.F.R. § 764.2(a) - Exports of Cattle Prods without the*

       *Required Licenses:* On 18 occasions, from on or about January 5, 2001 through on

---

[1] The charged violations occurred from 2001 through 2002. The Regulations governing the
violations at issue are found in the 2001- 2002 versions of the Code of Federal Regulations (15
C.F.R. Parts 730-774 (2001-2002)). The 2005 Regulations establish the procedures that apply to
this matter.

[2] Since August 21, 2001, the Act has been in lapse and the President, through Executive
Order 13222 of August 17, 2001 (3 C.F.R., 2001 Comp. 783 (2002)), as extended most recently
by the Notice of August 2, 2005, (70 Fed. Reg. 45273 (August 5, 2005)), has continued the
Regulations in effect under the International Emergency Economic Powers Act (50 U.S.C. §§
1701 - 1706 (2000)) ("IEEPA").

or about August 26, 2002, Springer Magrath engaged in conduct prohibited by the Regulations by exporting cattle prods (shaft assemblies, power packs and stock shocks), items subject to the Regulations and classified under export control classification number ("ECCN") 0A985, from the United States to various destinations, including Ireland, South Africa and Mexico, without the Department of Commerce licenses required by Section 742.7 of the Regulations.

2.   *Two Violations of 15 C.F.R. § 764.2(c) - Attempting Exports of Cattle Prods without the Required Licenses:* On two occasions, on or about December 6, 2001 and on or about August 12, 2002, Springer Magrath attempted violations of the Regulations by attempting to export cattle prods, items subject to the Regulations and classified under ECCN 0A985, from the United States to Ireland and Mexico, respectively, without the Department of Commerce licenses required by Section 742.7 of the Regulations.

3.   *Twenty Violations of 15 C.F.R. § 764.2(e) - Selling Cattle Prods Knowing that Violations of the Regulations were to Occur*: On 20 occasions from on or about January 5, 2001 through on or about August 26, 2002, Springer Magrath sold cattle prods, items subject to the Regulations and classified under ECCN 0A985, knowing that they were to be exported from the United States in violation of the Regulations. At all times relevant hereto, Springer Magrath knew that Department of Commerce export licenses were required to export the cattle prods and knew that the licenses would not be obtained.

4.   *One Violation of 15 C.F.R. §764.2(g) - False Statement to an Office of Export Enforcement Special Agent in the Course of an Investigation*: On or about August 26, 2003, in connection with an ongoing BIS, Office of Export Enforcement

Order
Springer Magrath
Page 2 of 6

("OEE") investigation into the unauthorized export of cattle prods, items subject to the Regulations, Springer Magrath represented to an OEE Special Agent that it only exported items to South Africa. This statement was false as Springer Magrath exported cattle prods to various destinations, including Ireland, Mexico, and Brazil.

WHEREAS, BIS and Springer Magrath have entered into a Settlement Agreement pursuant to Section 766.18(a) of the Regulations whereby they agreed to settle this matter in accordance with the terms and conditions set forth therein, and

WHEREAS, I have approved of the terms of such Settlement Agreement;

IT IS THEREFORE ORDERED:

FIRST, that a civil penalty of $451,000 is assessed against Springer Magrath, which shall be paid to the U.S. Department of Commerce within 30 days from the date of entry of the Order.

Payment shall be made in the manner specified in the attached instructions. The timely payment of this penalty is guaranteed by Marlin Springer, the President of Springer Magrath, in his individual capacity. Marlin Springer, in his individual capacity, and Springer Magrath are jointly and severally liable for timely payment of the fine.

SECOND, that, pursuant to the Debt Collection Act of 1982, as amended (31 U.S.C. §§ 3701-3720E (2000)), the civil penalty owed under this Order accrues interest as more fully described in the attached Notice, and, if payment is not made by the due date specified herein, Springer Magrath will be assessed, in addition to the full amount of the civil penalty and interest, a penalty charge and an administrative charge, as more fully described in the attached Notice.

THIRD, that the timely payment of the civil penalty set forth above is hereby made a condition to the granting, restoration, or continuing validity of any export license, license

Order
Springer Magrath
Page 3 of 6

exception, permission, or privilege granted, or to be granted, to Springer Magrath. Accordingly, if Springer Magrath or Marlin Springer should fail to pay the civil penalty in a timely manner, the undersigned may enter an Order denying all of Springer Magrath's export privileges for a period of one year from the date of entry of this Order.

FOURTH, for a period of three years from the date of entry of the Order, The Springer Magrath Company, 404 West B Street, McCook, Nebraska 69001, its successors or assigns, and when acting for or on behalf of Springer Magrath, its officers, representatives, agents, or employees ("Denied Person") may not participate, directly or indirectly, in any way in any transaction involving any commodity, software or technology (hereinafter collectively referred to as "item") exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations, including, but not limited to:

A.  Applying for, obtaining, or using any license, License Exception, or export control document;

B.  Carrying on negotiations concerning, or ordering, buying, receiving, using, selling, delivering, storing, disposing of, forwarding, transporting, financing, or otherwise servicing in any way, any transaction involving any item exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations; or

C.  Benefitting in any way from any transaction involving any item exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations.

FIFTH, that no person may, directly or indirectly, do any of the following:

A.  Export or reexport to or on behalf of the Denied Person any item subject to the Regulations;

Order
Springer Magrath
Page 4 of 6

B.     Take any action that facilitates the acquisition or attempted acquisition by the Denied Person of the ownership, possession, or control of any item subject to the Regulations that has been or will be exported from the United States, including financing or other support activities related to a transaction whereby the Denied Person acquires or attempts to acquire such ownership, possession or control;

C.     Take any action to acquire from or to facilitate the acquisition or attempted acquisition from the Denied Person of any item subject to the Regulations that has been exported from the United States;

D.     Obtain from the Denied Person in the United States any item subject to the Regulations with knowledge or reason to know that the item will be, or is intended to be, exported from the United States; or

E.     Engage in any transaction to service any item subject to the Regulations that has been or will be exported from the United States and which is owned, possessed or controlled by the Denied Person, or service any item, of whatever origin, that is owned, possessed or controlled by the Denied Person if such service involves the use of any item subject to the Regulations that has been or will be exported from the United States. For purposes of this paragraph, servicing means installation, maintenance, repair, modification or testing.

SIXTH, that, to prevent evasion of this Order, BIS, after notice and opportunity for comment as provided in Section 766.23 of the Regulations, may make any person, firm, corporation, or business organization related to Springer Magrath by affiliation, ownership, control, or position of responsibility in the conduct of trade or related services subject to the provisions of this Order.

SEVENTH, that this Order does not prohibit any export, reexport, or other transaction subject to the Regulations where the only items involved that are subject to the Regulations are the foreign-produced direct product of U.S.-origin technology.

Order
Springer Magrath
Page 5 of 6

EIGHTH, that, as authorized by Section 766.18 (c) of the Regulations, the denial period set forth above shall be suspended in its entirety for one year from the date of this Order, and shall thereafter be waived, provided that during the period of suspension, Springer Magrath has committed no violation of the Act or any regulation, order or license issued thereunder.

NINTH, that the proposed charging letter, the Settlement Agreement, and this Order shall be made available to the public.

This Order, which constitutes the final agency action in this matter, is effective immediately.


_____
Darryl W. Jackson
Assistant Secretary of Commerce
for Export Enforcement


Entered this _____ day of _____ 2006.

Order
Springer Macgrath
Page 6 of 6

# NOTICE

The Order to which this Notice is attached describes the reasons for the assessment of the civil monetary penalty. It also specifies the amount owed and the date by which payment of the civil penalty is due and payable.

Under the Debt Collection Act of 1982, as amended (31 U.S.C. §§ 3701-3720E (2000)), and the Federal Claims Collection Standards (31 C.F.R. Parts 900-904 (2002)), interest accrues on any and all civil monetary penalties owed and unpaid under the Order, from the date of the Order until paid in full. The rate of interest assessed respondent is the rate of the current value of funds to the U.S. Treasury on the date that the Order was entered. However, interest is waived on any portion paid within 30 days of the date of the Order. See 31 U.S.C.A. § 3717 and 31 C.F.R. § 901.9.

The civil monetary penalty will be delinquent if not paid by the due date specified in the Order. If the penalty becomes delinquent, interest will continue to accrue on the balance remaining due and unpaid, and respondent will also be assessed both an administrative charge to cover the cost of processing and handling the delinquent claim and a penalty charge of six percent per year. However, although the penalty charge will be computed from the date that the civil penalty becomes delinquent, it will be assessed only on sums due and unpaid for over 90 days after that date. See 31 U.S.C.A. § 3717 and 31 C.F.R. § 901.9.

The foregoing constitutes the initial written notice and demand to respondent in accordance with section 901.2(b) of the Federal Claims Collection Standards (31 C.F.R. § 901.2(b)).

INSTRUCTIONS FOR PAYMENT OF CIVIL PENALTY

1.     The civil penalty check should be made payable to:

U.S. Department of Commerce

2.     The check should be mailed to

U.S. Department of Commerce
Bureau of Industry and Security
Export Enforcement Team
Room H-6883
14th Street and Constitution Avenue, N.W.
Washington, D.C.  20230

ATTN: Sharon Gardner